# Richmond

RONALD LEE SMITH v. COMMONWEALTH OF VIRGINIA.

January 17, 1972.

Record No. 7757.

Present, All the Justices.

*Gordon H. Shapiro*, for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Ronald Lee Smith was tried by the court below on an indictment charging him with statutory burglary, found guilty, and his punishment fixed at confinement in the state penitentiary for a period of

three years. He was sentenced accordingly, and we granted him a writ of error.

On March 4, 1970 the Fred P. Williamson home, located in Botetourt County, was burglarized and various articles of personal property, including a .32 caliber automatic pistol and three coinbooks, were stolen. This burglary led to the conviction under review. The dispositive issue here is whether, as defendant contends, the trial court erred in admitting into evidence the pistol and coinbook allegedly stolen at the time of the burglary.

Gladys and Susie Spigle live across the road from and in sight of the Williamson home. Both testified that during the morning of March 4, 1970 a blue pickup truck occupied by three men drove into their yard, and a conversation was had between Gladys Spigle and the driver of the truck.

On the same day, at approximately 11:55 A. M., Deputy Sheriff R. M. Brown, of Roanoke County, was driving east on Routes 11-460 in the West Salem area of that county. At a point known as Dixie Caverns he observed a blue pickup truck occupied by three men and headed west. He noticed that one of the men was wearing a jacket with large squares in it. This truck fitted the description of a truck that had been seen at the scene of a burglary which occurred in Roanoke County on February 25, 1970, and Brown was looking for that truck. A witness to the February 25th burglary had reported that it was committed by three individuals, one wearing a jacket with a large square design, and that they used a blue pickup truck to accomplish that burglary.

Brown suspected that the occupants of the blue pickup truck were the same persons involved in the burglary of February 25th. Accordingly he turned around and followed the truck on Highways 11-460 into Montgomery County. When the blue truck reached a point, identified by Brown as "the Sausage Plant in Montgomery County", it turned right and proceeded along a secondary road toward a settlement known as Ironto. Brown followed the truck until it pulled off to the side to let him pass. He then stayed in front of the truck, keeping watch as best he could through his rear view mirror, until he lost sight of it on a curve. Brown continued up the road for a distance and turned around. He did not then observe the truck at the curve where he last saw it. Brown continued to Routes 11-460 and, not seeing the truck there, "doubled back" to the curve. He said that there he looked up into the woods where there was a house and he

saw a blue truck and men running back and forth between the house and the truck. Upon observing this Brown again went up the road a distance, turned around and came back to wait for the truck to come out. When he got back to the curve and house the truck had left.

Brown then continued to the main highway (Routes 11-460) where he again saw the blue pickup truck pulling out into the eastbound lane of the highway. He followed the truck, and seeing Deputy Sheriff Jeff Nolley of Montgomery County, who was also traveling east on the highway, he radioed Nolley "to let's stop this truck in front of us". About that time the truck pulled across the west lane of the highway and stopped behind the Valley Truck Stop.

Brown and Nolley pulled off in front of the blue truck. Brown got out and identified himself to the occupants of the truck. He noticed that there were objects in the back of the truck covered with a sheet, and a small television on the floor of the cab. He also saw "a leg or something another under the sheet" and a blanket. There were three men in the truck, subsequently identified as Ronald Lee Smith, Tommy Franklin Early and Gene Elgin Guthrie.

The men were detained in the truck for a period of time, estimated at from one to two hours, before being formally arrested. During this time Brown called on the radio to Montgomery County requesting that another deputy be sent to the scene. He left Nolley with the men and went back to the house where he had seen the suspicious activity. He found that the back door of the dwelling was open. He ascertained from the mailbox that the home was owned by Mr. and Mrs. Donald L. Robertson, who were then absent. Mrs. Robertson was contacted. She came to the Valley Truck Stop and identified the sheet, blanket and television sets in the truck as her property.

Following this identification the three men were arrested. When they got out of the truck the officers saw on the floorboard of the vehicle a .32 caliber automatic pistol subsequently identified by Williamson as having been stolen from his home on March 4, 1970. The men and truck were taken to the Montgomery County jail and a more thorough search was made of the truck. A coin collection book was found in the glove compartment and was also identified by the Williamsons as their property.

The defendant contends here that when Deputy Sheriff Brown stopped the truck this action constituted an effective arrest. He further says that because Brown had no probable cause to believe defendant had committed the offense for which he was tried in the

court below, or any offense, the arrest or detention was merely an "arrest for investigation", and was therefore illegal. He then argues that the pistol and coinbook should have been suppressed as evidence because seized incident to an illegal arrest.

It is apparent that an arrest was effected when the defendant was detained while Brown was attempting to locate Mrs. Robertson and have her identify the articles in the back of the truck. However, we do not agree that this arrest, the search of the truck at that time, or subsequently at the Montgomery County jail, were without probable cause. Brown had reason to suspect that the blue truck and its occupants, which he saw on the highway on March 4, 1970, were the same truck and persons that were involved in the burglary of February 25, 1970. The February burglary had been observed by an eyewitness, who saw the three individuals involved and noted that one wore a conspicuous jacket, and that they were using a blue pickup truck. The truck that Brown followed and stopped on March 4th was blue. It was a pickup. It was occupied by three men. One of the occupants wore a jacket with a block design.

Brown did not immediately stop the truck but because of his suspicion followed and observed it. During his observation he noted the truck parked near a dwelling house and that the men were running back and forth between the truck and the dwelling. This indicated to him that articles were being improperly removed from the house and placed in the truck.

When he first observed the truck on the highway the body of it was empty. After its stop at the Robertson house the truck was loaded and its contents were concealed by a sheet.

Brown had reasonable cause to detain and arrest the defendant without a warrant and to search the truck without a search warrant.

We recently held in *Howard* v. *Commonwealth*, 210 Va. 674, 678, 173 S. E. 2d 829, 833 (1970) that:

"Probable cause exists where the facts and circumstances known to the officer warrant a man of reasonable caution in believing the suspect has committed an offense. *Henry* v. *United States, supra,* 361 U. S. at 102, 80 S. Ct. at 171, 4 L. Ed. 2d at 138; *Brinegar* v. *United States,* 338 U. S. 160, 175-76, 69 S. Ct. 1302, 1310-11, 93 L. Ed. 1879 (1949).

\* \* \* \* \*

"When the evidence shows that probable cause exists for arresting a suspect for a felony, and it is clear that evidence seized in

a contemporaneous search of the suspect's person was not necessary to establish probable cause, the search is incidental to the arrest and is valid whether it takes place at the moment the arresting officer takes the suspect into custody or when he announces that the suspect is under arrest. *Husty* v. *United States*, 282 U. S. 694, 700, 51 S. Ct. 240, 241, 75 L. Ed. 629 (1931)."

*See Chambers* v. *Maroney*, 399 U. S. 42 (1970), *Terry* v. *Ohio*, 392 U. S. 1 (1968) and *McKoy* v. *Commonwealth*, 212 Va. 224, 183 S. E. 2d 153 (1971).

The pistol and coinbook, having been lawfully seized by officers making a lawful arrest and a lawful search, were therefore properly admitted into evidence. The evidence supports the judgment of the court below and it is

*Affirmed.*