# Richmond.

## NORFOLK AND WESTERN RAILWAY COMPANY
## v. SINK'S EXECUTOR.

January 13, 1916.

Absent, Cardwell, J.

1. INSTRUCTIONS—*Negligence—Evidence.*—Where issue is taken on the plea of not guilty in a tort action, it is for the jury to pass upon the issue of guilty or not guilty, and in passing upon that question it is their plain duty to consider all the evidence which has been put before them, whether by the plaintiff or the defendant. The instruction given in the case at bar did not restrict them to a consideration of only the evidence offered by the plaintiff.

2. RAILROADS—*Grade Crossing—Gates—Passenger Approaching—Negligence.*—Although a railroad company maintains gates at a grade crossing of a city street, its failure to have the gates down on the near approach of a train does not relieve a foot passenger about to cross the track from exercising care and caution for his own safety before attempting to cross. He should look in both directions and listen for approaching trains before attempting to cross, and if he fails to do so and, in attempting to cross, is injured by a passing train, he is guilty of such contributory negligence as bars recovery.

3. RAILROADS—*Grade Crossing—Gates—Approaching Passenger—Negligence—Last Clear Chance.*—Where there are gates on each side of a railroad crossing which a foot passenger is approaching, and the near gate is up, but the far one down, it is a sufficient warning of danger, and if he sees or by the exercise of ordinary care ought to see this condition and continues on to the track and is injured by a passing train, he is guilty of negligence and cannot recover, unless the railroad company had the last clear chance of avoiding the injury.

4. RAILROADS—*Negligence—Fact of Injury—Presumption—Last Clear Chance.*—In a personal injury action the doctrine of the "last clear chance" has no application to an instruction which tells the jury that the fact that the plaintiff was struck and injured by defendant's engine does not raise any presumption of negligence against the defendant, but that the burden rests upon the plaintiff to show

by a preponderance of the evidence that the defendant was guilty of negligence in one or more of the particulars charged in the plaintiff's declaration, and that such negligence was the sole proximate cause of the accident complained of, otherwise the jury must find for the defendant.

5. RAILROADS—*Negligence—Persons Approaching Track—Lookout.*—Railroad companies are not required to stop their trains or take other precautions merely because a person is seen approaching the track. They have the right to presume that such person will stop before placing himself in a position of danger. They are required to keep a reasonable lookout to bring their trains under control and, if necessary, to stop when they discover a person in a place of danger, or under circumstances which would induce a reasonable man to apprehend that a person, apparently unconscious of danger, was about to put himself in position of peril.

6. NEGLIGENCE—*Emergency—Care Required.*—A plaintiff who, by his own negligence, has placed the defendant in an emergency, cannot require of the defendant the wisest possible action in order to save him from the consequences of his own fault. If, in such emergency, the defendant did what at the time he thought was the best thing to do and exercised ordinary care, under all the circumstances, he is not liable, even though it subsequently appears that what he did was not the best or wisest thing to have done, and if he had done the latter a different result, in part at least, would have followed.

Error to a judgment of the Corporation Court of the city of Roanoke in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The instructions given on motion of the defendant at the first trial and referred to in the opinion of the court were as follows:

Instruction No. 5. The court instructs the jury that this is an action based upon the charge of negligence and the burden of proving negligence rests upon the plaintiff, and he must establish it by a preponderance of affirmative evidence. A mere probability that the defendant company has been guilty of negligence will not be sufficient, but negligence is a fact and must be established like any other fact by a preponderance of

affirmative evidence, and unless the plaintiff establishes the fact of negligence on the part of the railway company as alleged in the declaration, there can be no recovery in this case at all.

Instruction No. 6. The court instructs the jury that though they may believe from the evidence that the defendant company did not have the gate on the west side of the Tazewell avenue crossing lowered on the occasion of the approach of the engine and tender at the time of the accident when plaintiff's decedent went upon said crossing, yet the said failure on the part of the defendant company did not relieve the plaintiff's decedent, Mrs. Flora Sink, from exercising care and caution in attempting to go across the railroad tracks at said crossing; that it was the duty of plaintiff's decedent, Mrs. Flora Sink, before attempting to cross the tracks at said crossing to look in both directions and to listen for approaching trains, and that if she did not do this, but went upon the tracks without looking and listening, in such a position as to be struck by the tender of engine 110, then she was guilty of such negligence as precludes any recovery, and the jury must find for the defendant, unless the jury further believes from the evidence that the defendant's agents in charge of said engine, discovered, or by exercising ordinary care could have discovered, her peril in time to have prevented her injury by exercising ordinary care.

Instruction No. 7. The court instructs the jury that even though it may believe that the west gate was up, and that the plaintiff's intestate passed on to the crossing through the open gate, but if they further believe that she did see, or could by the exercise of ordinary care have seen, that the east gate was down, then this was sufficient to warn her of the danger of approaching the east track, and if she still continued to approach it, disregarding the warning given by the down gate near the east track, if they so believe, she was guilty of negligence and cannot recover, unless the jury shall further believe from the evidence that the servants of said defendant in charge

of said engine discovered, or by the exercise of ordinary care should have discovered, the peril of plaintiff's intestate in time, by exercising ordinary care, to have avoided injuring her.

Instruction No. 8. The court instructs the jury that the fact that the plaintiff was struck and injured by defendant's tender of engine 110 does not raise any presumption of negligence against the defendant, but the burden rests upon the plaintiff to show by a preponderance of the evidence that the defendant was guilty of negligence in one or more of the particulars charged in the plaintiff's declaration, and that such negligence was the sole proximate cause of the accident complained of, otherwise the jury must find for the defendant.

Instruction No. 9. The court instructs the jury that if it believes from the evidence that the west gate and the east gate were both down, and that the plaintiff's intestate undertook or attempted to, and did get under the west gate, and cross over the track notwithstanding the fact the west gate was down, if they so believe, and continued her journey to the east track, if they so believe, and that the gate near the east track was in full view of her had she looked, then she was guilty of negligence as a matter of law in going on to the east track when she knew that the west gate was down and the east gate was down, and if she was injured by reason of the fact that she went on to the east track she cannot recover, unless the jury shall further believe from the evidence that the servants of said defendant in charge of said engine discovered, or by the exercise of ordinary care could have discovered, the peril of plaintiff's intestate in time, by exercising ordinary care, to have avoided injuring her.

Instruction No. 10. The court instructs the jury that railway trains have the right of way at a public crossing, and that it is the duty of one about to cross a railroad track at a public crossing to use both his eyes and ears to avoid danger to himself. A railway track is a proclamation of danger, and a traveller approaching a railroad crossing must look and listen for an

approaching train, and it is not sufficient for him to look in one direction, but he is bound to look in both directions from which engines and cars may approach, and it is the traveller's duty to exercise ordinary care to make the act of looking and listening effective, and he must exercise a higher degree of care where the crossing is dangerous than where it is not. If the traveller fails to use these necessary precautions and injury results he is guilty of contributory negligence notwithstanding any failure on the part of the defendant's employees to lower the gates at the crossing in time, or to ring the bell of the approaching engine. Hence, if the jury shall believe from evidence that after plaintiff's intestate has passed the west gate of the crossing on Tazewell avenue west of the track on which the engine and tender was approaching, said engine and tender was in full view of the plaintiff's decedent, Mrs. Flora Sink, for several hundred feet before it reached the point of accident, and that said engine and tender could have been seen by her for such distance, if she had been on the lookout for an approaching train, and if the jury further believes that under these circumstances the plaintiff's intestate continued to pass over said crossing and went upon the track on the east side in front of said tender of engine 110 and was killed as a result of a collision therewith, that such conduct on her part constitutes in law such negligence as to deprive the plaintiff of the right to recover in this action, and the jury must find for the defendant, unless the jury shall further believe from the evidence that the servants of said defendant in charge of said engine discovered, or by the exercise of ordinary care could have discovered the peril of plaintiff's intestate in time by exercising ordinary care to have avoided injuring her.

Instruction No. 11. If the jury believe from the evidence that Mrs. Flora Sink, after she has passed the gate at the west side of Tazewell avenue crossing, whether said gate was up or down, was proceeding across the tracks of said crossing going eastward, and that she was in full view of the engine 110, and

its tender coming backward northward towards said crossing upon the track furtherest east at said crossing, that the crew of said engine and tender had the right to presume that she would stop before she got to said track in which said engine and tender was travelling and no duty rested on the crew of said engine and tender to stop said engine and tender until they saw or by the exercise of ordinary care could have seen that she did not intend to stop, and for that reason would be in danger of being struck by said tender. And if the jury further believe from the evidence that after said crew saw, or by the exercise of ordinary care could have seen, that Mrs. Sink did not stop or intend to stop and in consequence was likely to be struck by said tender said crew of said engine and tender did use ordinary care to stop said engine, and avoid the accident without avail, that this was all the law required, and the defendant company is not liable, and they must find for the defendant.

Instruction No. 13. The court instructs the jury that if it believes from the evidence that Mrs. Sink was guilty of negligence in either going under an open gate or a down gate or in not looking and listening, and if, at the same time, they believe that the railway company was guilty of negligence in not sounding the bell or giving the proper warning or in not lowering the west gate, or in any other manner charged in the declaration, and if these two acts came together, and the negligence of each continued up to the point and the time of the accident it would be a case of concurrent negligence, and there could be no recovery by the plaintiff in this case.

Instruction No. 14. If the jury believe from the evidence that the accident to Mrs. Flora Sink at Tazewell avenue crossing was brought about as the result of her own negligence in getting upon the track so as to be struck by the tender of engine 110, that the defendant is not liable if its employees in charge of said engine, acting in the emergency in getting the tender off of her did what they, at that time, thought was the best

thing to do, and exercised ordinary care, under all the circumstances even though the jury believe from the evidence she was further injured by said tender being moved forward off of her.

*Theodore W. Reath* and *Smith & McCormick,* for the plaintiff in error.

*Hoge, Williams & Darnall,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Upon the first trial of this cause there was a verdict for the defendant, which, upon a motion made by the plaintiff, was set aside, and at the second trial there was a verdict and judgment for the plaintiff.

By virtue of section 3484 of the Code of Virginia, the court must "look first to the evidence and proceedings on the first trial, and if it discovers that the court erred in setting aside the verdict on that trial it shall set aside and annul all proceedings subsqunt to said verdict and enter judgment thereon."

It appears from the bill of exceptions taken by the defendant on the first trial that there was evidence tending to prove that Mrs. Sink approached the Norfolk and Western Railroad at a street crossing in the city of Roanoke; that the gates were down; that the bell of the engine was being rung; and that there was an unobstructed view of the railroad track for a considerable distance. The evidence tends to prove that at the point of the accident there were four tracks; that an engine and tender of the Norfolk and Western were going north; that the crew in charge of the engine saw Mrs. Sink approach, but observing that the gates were down were of opinion that under the existing conditions it was not to be apprehended that she would walk upon the railroad track and did not immediately stop the engine; that Mrs. Sink stooped under the gate to the

west and approached the track, and when it was seen that she was in a position of danger, that the crew did what they could for her protection. She was struck by the tender, thrown down and sustained severe injuries from which she subsequently died.

We think it cannot be successfully denied that Mrs. Sink was guilty of contributory negligence, and that the finding of the jury of a verdict for the defendant ought not to be disturbed unless the court committed error in the instructions which it gave.

The defendant in error claims that Instruction No. 5, given by the court at the instance of plaintiff in error upon the first trial is erroneous. It is not denied that "as an abstract proposition of law it might be true," yet it is said that "it is not applicable in this case, because the negligence of the defendant appears by the evidence of the defendant's witnesses, the employees operating the engine;" and defendant in error insists that the court, having instructed the jury that the burden of proving negligence rests upon the plaintiff and he must establish it by a preponderance of the affirmative evidence, confined the jury in determining the question of negligence to the evidence adduced by the plaintiff.

We do not so understand the instruction. It is for the jury to pass upon the issue of guilty and not guilty, and in passing upon that question it was their plain duty to consider all of the evidence which had been put before them, whether by the plaintiff or the defendant.

Instruction No. 6 tells the jury that, "though they may believe from the evidence that the defendant company did not have the gate on the west side of the Tazewell avenue crossing lowered on the occasion of the approach of the engine and tender at the time of the accident, when plaintiff's decedent went upon said crossing, yet the said failure on the part of the defendant company did not relieve the plaintiff's decedent, Mrs. Flora Sink, from exercising care and caution in attempting to go

across the railroad tracks at said crossing; that it was the duty of plaintiff's decedent, Mrs. Flora Sink, before attempting to cross the tracks at said crossing to look in both directions and to listen for approaching trains, and that if she did not do this, but went upon the tracks without looking and listening, in such a position as to be struck by the tender of engine 110, then she was guilty of such negligence as precludes any recovery, . . . ."

The precise question presented in this instruction arose in this way: There were two gates across the street, one to the west and one to the east. There is no room for doubt upon the evidence that the eastern gate was down. There is evidence also strongly tending to show that the gate to the west also was down, and that Mrs. Sink stooped under it in approaching the track, but as to the western gate there is some conflict in the evidence, though we think the preponderance of the testimony is with the plaintiff in error upon that point. However that may be, it was to meet that aspect of the proof that instruction No. 6 was given. Defendant in error upon this point states that the instruction "might be the law applicable to a road crossing in the country where there are no signals, gates, or watchmen. At such a place the traveller is expected to do his own looking and listening, and is required to rely entirely upon his own faculties. This does not apply with the same force, however, to a street crossing in a city where there is much noise from passing vehicles and where there are so many things to distract the attention of the traveller, and where the train is supposed to be under control, and certainly does not apply where the law, as in this case, required gates to be erected and the gates to be down."

In the case of *Rangeley* v. *Southern Ry. Co.,* 95 Va. 715, 30 S. E. 386, the court approved the following instruction: "The court instructs the jury that though they may believe from the evidence that an ordinance of the city of Danville required the defendant to have a gate at the Craghead street

crossing, with a man in charge of the same, and to lower said gates whenever a train attempted to cross said street, and though they may believe from the evidence that the defendant company failed to provide said gatekeeper at the crossing in question, or to have said gate lowered on the occasion of the accident, and though they may believe that the defendant company failed to have at the front of the train as it approached said crossing, a light, or to signal its approach by bell or otherwise, yet, the said failures on the part of the company did not relieve the plaintiff's intestate, Ellis W. Rangeley, from exercising care and caution in attempting to avoid injury from the approaching train. That it was the duty of said Rangeley before attempting to cross said track, or while standing on or near to said track, to look in both directions, and to listen for approaching trains, and that if said Rangeley stepped upon said track without looking and listening, or stood in such close proximity to said track without looking and listening as to be struck by said train, then said Rangeley was guilty of such contributory negligence as precludes any recovery, and the jury must therefore find for the defendant." Two objections were urged to this instruction. One was that "the court ought to have defined the 'care and caution' which it was the duty of the plaintiff's intestate to exercise in approaching the crossing under the facts hypothetically stated in the instruction." Said the court: "We do not think the jury could have been misled by the language complained of, even if the court had not in the same instruction defined the care and caution which it was the duty of the decedent to exercise. In the next sentence it says: 'That it was the duty of said Rangeley before attempting to cross the said track, or while standing on or near said track, to look in both directions, and listen for approaching trains, and that if said Rangeley stepped upon said track without looking and listening, or stood in such close proximity to said track as to be struck by said train, the said Rangeley was guilty of such contributory negligence as precludes any recovery, and

the jury must therefore find for the defendant.' This language leaves no doubt of the degree of care and caution which it was his duty to exercise." The opinion then continues: "The other ground of objection to the instruction is that it failed to state that although the decedent was guilty of contributory negligence, still the plaintiff was entitled to recover if the defendant could have avoided the injury after it discovered the peril of the decedent, or might have discovered it by the exercise of ordinary care. There is no evidence tending to prove that the defendant knew that the deceased was on its track until after he was run over. If it had seen him, a man nineteen years of age, possessed of all his faculties, on or near its track, it would have had the right to assume that he would get out of the way of the approaching train; and there is nothing in the evidence tending to show that after it could have discovered that he was not going to do what it had the right to assume that he would do, it could have avoided the injury."

The instruction under consideration seems to be fully supported by the case just cited; indeed, the case before us is a stronger one, because while it is predicated upon the fact that the west gate was up, the slightest care would have informed the traveler that the east gate was down, and that would have warned her of the danger of crossing the track at that moment.

Instruction No. 7 undertakes to deal with the situation, assuming that the western gate was up, and tells the jury that if plaintiff's intestate passed on to the crossing through this open gate she was guilty of negligence if she saw, or by the exercise of ordinary care could have seen, that the east gate was down, which would have been a sufficient warning to her of the danger of approaching the east track. We see no objection to that instruction. The whole situation was open to view and there can be no doubt that the decedent could by the exercise of ordinary care have seen that the east gate was down; and, therefore, as the instruction says, "if she still

continued to approach it, disregarding the warning given by the down gate near the east track, if they so believe, she was guilty of negligence and cannot recover, unless the jury shall further believe from the evidence that the servants of said defendant in charge of said engine discovered, or by the exercise of ordinary care could have discovered, the peril of plaintiff's intestate in time, by exercising ordinary care, to have avoided injuring her."

The eighth instruction is brief and we will quote it in full. "The court instructs the jury that the fact that the plaintiff was struck and injured by defendant's tender of engine 110 does not raise any presumption of negligence against the defendant, but the burden rests upon the plaintiff to show by a preponderance of evidence that the defendant was guilty of negligence in one or more of the particulars charged in the plaintiff's declaration, and that such negligence was the sole proximate cause of the accident complained of, otherwise the jury must find for the defendant."

The objection made to this instruction is that it concludes with a direction to find for the defendant and eliminates the doctrine of the last clear chance. It is plain that if the conditions upon which that instruction is predicated were true, the doctrine of the last clear chance has no application, for the jury were told that the burden rests upon the plaintiff to show by a preponderance of evidence that the defendant was guilty of negligence in one or more of the particulars charged in the plaintiff's declaration, and that such negligence was the sole proximate cause of the accident complained of, otherwise the jury must find for the defendant. That instruction correctly states the law, and of course, if the negligence of the defendant were not the sole proximate cause of the accident, the plaintiff was not entitled to recover.

The ninth instruction was intended to meet that aspect of the proof on behalf of the defendant which tended to show that both the west and the east gates were down, and that the plain-

tiff's decedent got under the west gate, and crossed over the track and continued her journey to the east track; and the jury were told that if they so believed, and that the gate near the east track was in full view of her had she looked, then she was guilty of negligence as a matter of law in going on to the east track when she knew that the west gate was down and the east gate was down, and if she was injured by reason of the fact that she went on to the east track she cannot recover, unless the jury shall further believe from the evidence that the servants of said defendant in charge of said engine discovered, or by the exercise of ordinary care could have discovered the peril of plaintiff's intestate in time, by exercising ordinary care, to have avoided injuring her."

Instruction No. 10 is objected to on the part of defendant in error upon the authority of *Norfolk Southern Ry. Co.* v. *Crocker,* 117 Va. 327, 84 S. E. 681. In that case it was held that "If it appears that those in control of a train, in the discharge of their duty to keep a reasonable lookout, discover, or should have discovered, a person upon the track, and there be superadded any fact or circumstances brought home to their knowledge sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger and will take no step to secure his own safety, then the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery." We do not think that that case has any bearing upon the one under consideration.

Instruction No. 11 tells the jury that if they believe from the evidence that Mrs. Sink was in full view of engine 110 and its tender, coming backward northward towards the crossing upon the track furthest east at said crossing, that the crew of said engine and tender had the right to presume that she would stop before she got to said track on which said engine and tender was travelling and no duty rested on the crew of said

engine and tender to stop said engine and tender until they saw, or by the exercise of ordinary care could have seen, that she did not intend to stop, and for that reason would be in danger of being struck by said tender." And the instruction then concludes with the statement that if after the crew saw that she did not stop or intend to stop, they used ordinary care to avoid the accident, they must find for the defendant.

That instruction is in accordance with the course of decision in this court. If railroad trains were to be stopped whenever a person was seen approaching a track, it would be impossible for the railroad company to discharge its duty to the public. Railroad companies are required by law to keep a reasonable lookout, to bring their trains under control and when necessary to stop when they discover a person in a place of danger, or under circumstances which would induce a reasonable man to apprehend that a person, apparently unconscious of danger, was about to put himself in a position of peril.

After this old lady was knocked down, the tender passed over her and inflicted injuries from which she died, and for which suit was brought. It was found to be difficult to extricate her from the horrible position in which she was placed, and defendant in error claims that the court should consider the record as though it presented two distinct cases, and that although the decedent may have been guilty of contributory negligence sufficient to prevent a recovery on account of what occurred prior to the time that the engine was stopped, yet, if she suffered any additional injury in the process of extricating her from the peril in which she was placed, the jury should have found in her favor upon that ground, and that, therefore, it was error in the instructions applicable to the earlier stages of the accident, that is, before the stoppage of the engine, to conclude with a direction to the jury to find for the defendant, because such a direction was in violation of the well-established rule that a direction to the jury to find for the plaintiff or the defendant must bring to their attention all of the evidence,

and that in this case the court, in its instructions, ignored the injury resulting from the negligence of the employees of the railroad company after the stoppage of the engine and tender, in their efforts to extricate Mrs. Sink from the peril in which she was placed.

We do not mean, of course, to say that such a case might not have been made as would have entitled the plaintiff to recover for subsequent acts of negligence, but we are of opinion that no such case is presented by this record. It is easy after the event to look at a situation where men are called upon to act in an emergency and to discover and point out errors of judgment in which, if they had not been committed, a different result would have followed. It may be that the crew of the engine did not do that which was wisest and best, but there is nothing to show that they did not honestly and faithfully endeavor to remove this poor lady from the dreadful position in which she was placed in the most expeditious, safest and least injurious manner. Upon this branch of the case the jury were told: "If the jury believe from the evidence that the accident to Mrs. Flora Sink at Tazewell avenue crossing was brought about as the result of her own negligence in getting upon the track so as to be struck by the tender of engine No. 110, that the defendant is not liable if its employees in charge of said engine, acting in the emergency in getting the tender off of her, did what they, at that time, thought was the best thing to do, and exercised ordinary care, under all the circumstances, even though the jury believe from the evidence she was further injured by said tender being moved forward off of her."

In *Wise Terminal Co.* v. *McCormick*, 104 Va. 400, 51 S. E. 731, the law is thus stated in the fifth syllabus: "One who, by his own negligence, has placed another in an emergency, cannot require of that other the wisest possible action in order to save him from the consequences of his own fault." Judge Cardwell, in the course of the opinion in that case, says: "Ordi-

narily it is the party injured who invokes the doctrine sanctioned by this court in *Richmond Ry. & Elec. Co.* v. *Hudgins,* 100 Va. 409, 41 S. E. 736, that 'one may not, by his own negligence or want of proper care, place another in a perilous situation, and when sued for injuries resulting therefrom put the burden on the plaintiff of showing that he acted with reasonable care. Persons in great peril are not required to exercise the presence of mind required of prudent men under ordinary circumstances;' but, as it seems to us, no good reason can be given why the converse of the proposition is not equally sound. Here the party doing the injury, *i. e.,* the watchman, or acting engineer, Taylor, claims, and, as we think, properly, that having been suddenly put into an emergency by the negligence of the plaintiff, the latter could not require of him the wisest possible action. In other words, if the view of the plaintiff in this case be correct, A, by his gross negligence, may require action on the part of B to save him from the consequences of his own fault, and if B does not automatically and instantly do that which will conduce to his safety B is liable." See *Brewing Co.* v. *Doyle,* 102 Va. 404, 46 S. E. 390.

We are of opinion that the court correctly instructed the jury upon the first trial; that the evidence was sufficient to sustain the verdict of the jury, and that the court erred in setting the verdict aside and granting a new trial. This court, therefore, will proceed to enter such judgment as the corporation court should have rendered.

*Reversed.*